SEALED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,

                              Plaintiff,

- against -

Combo Trading Inc., John Chan,
a/k/a Mr. Chan, first name unknown,
Angus Wong, and John Does #1-10,

                              Defendants.

----------------------------------------X

07-CV-3880
(CPS)(SMG)

MEMORANDUM
OPINION AND
ORDER

SIFTON, Senior Judge.

Plaintiff Koon Chun Hing Kee Soy & Sauce Factory, Ltd., brings this action against defendants Combo Trading Inc.; John Chan, a/k/a Mr. Chan, first name unknown; Angus Wong; and John Does #1-10. In the Complaint, plaintiff alleges that defendants engaged in (1) trademark infringement, pursuant to 15 U.S.C. § 1114; (2) counterfeiting, pursuant to 15 U.S.C. § 1116; (3) trade dress infringement, pursuant to 15 U.S.C. § 1125(a); (4) unfair competition, pursuant to 15 U.S.C. § 1125(a); (5) dilution, under NY Gen. Bus. Law, Section 360-L; and (6) common law unfair competition. Now before this Court is plaintiff's motion for an *ex-parte* seizure order, pursuant to 15 U.S.C. § 1116. For the reasons set forth below, plaintiff's motion for an *ex-parte* seizure order is denied without prejudice.

## Background

The following facts are derived from plaintiff's Complaint and papers submitted in support of this motion and are accepted as true for the purposes of this application.

*Plaintiff's Business and Trademarks*

Plaintiff, a Hong Kong company, manufactures and distributes Cantonese food products such as sauces and seasonings under the name Koon Chun. These products are manufactured in Hong Kong and sold to exporters who buy the products on behalf of distributors around the world. The United States is one of plaintiff's largest markets.

Since September 1986, Plaintiff has been the owner of a trademark registered with the United States Patent and Trademark Office, featuring a distinctive design that is used on all Koon Chun products and in conjunction with distinctive colors and shapes (including the shape of an antique Chinese wine glass) on product labels (the "trade dress"), which serves to distinguish the products for consumers. The label design has become associated by consumers and industry with plaintiff, and plaintiff enjoys substantial goodwill from the label design owing to the length of use and the design's distinctive nature.[1]

---

[1] The trademark has been in use since 1927 and the current design of the product labels has been in use for over ten years.

*Defendants' Activities*

There exists an illicit industry manufacturing, importing, distributing and selling unauthorized versions of products of the type made by plaintiff bearing counterfeit versions or colorable imitations of plaintiff's trademark in the United States. Over the last several years, since discovering that such counterfeiting was going on, plaintiff has initiated several actions in United States courts to halt these activities and has, on order of appropriate courts, seized a substantial number of counterfeit items. These seizures included a seizure authorized by this Court on July 18, 2007, during which 17 cases of counterfeit Koon Chun products were recovered and a seizure authorized by this Court on August 6, 2007, during which 236 cases and three loose cans of counterfeit Koon Chun products were recovered. In the current action, plaintiff alleges that the defendants have engaged in selling counterfeit products bearing plaintiff's trademark and trade dress.

On August 22, 2007, for unexplained reasons, Koon Chun's investigator went to a warehouse located at 111 13th Street, Brooklyn, NY 11215 where he noticed the sign "Combo Trading Inc." displayed at the premises. After informing an unidentified individual at the door that he wanted to purchase various sauce products, he was instructed to go to the office inside the warehouse. On his way to the office, he noticed about 50 cases

of Koon Chun hoisin sauce and 50 cases of Koon Chun thick soy sauce being stored on warehouse racks. He observed that several of the hoisin sauce cases carried the same code number LGTD06375X on each of the cases and several cases of thick soy sauce carried the same code number VPGX00500J on each of the cases. According to plaintiff, genuine Koon Chun products carry a different code number on each case. Based on these observations, the investigator concluded that the contents of the cases were counterfeits.

When the investigator arrived at the office, he placed an order with another unidentified individual for one case of Koon Chun hoisin sauce, one case of Koon Chun thick soy sauce, one case of Koon Chun ground bean sauce, one case of Lee Kum Kee Panda brand oyster sauce, and one case of Koon Chun red vinegar. The investigator was provided with a handwritten invoice that did not list the brand names, only the product descriptions. The investigator paid $115.25 in cash for the purchase. The investigator asked for and received a calling card. The card stated "Combo Trading Inc." with the name of "Sai Kin Lam" in Chinese. The investigator asked the man who sold the goods to him whether he was Mr. Lam. The man replied that his surname was Chan and that Mr. Lam was his colleague.

When the investigator later inspected the products he had purchased, he found that the one case of Koon Chun hoisin sauce,

one case of Koon Chun thick soy sauce, and one case of Koon Chun ground bean sauce, contained counterfeit goods.[2] According to Koon Chun's investigator, the boxes of these products were hand-glued, in contrast to authentic Koon Chun boxes which are machine glued. In addition, the number "1" on the date/time stamp on the counterfeit products had a short horizontal line at the bottom of the number, while authentic Koon Chun products have no such line.

## Discussion

Plaintiff now seeks a seizure order allowing it to enter, search for, and seize property located at 111 13th Street, Brooklyn, NY.[3] The property to be seized is described as all merchandise bearing a copy of plaintiff's trademark (or any marking substantially indistinguishable therefrom); all forms of markings (such as labels and signs), packaging materials, advertisements, bearing a copy of plaintiff's trademark (or any marking substantially indistinguishable therefrom) and all equipment which bears a copy of plaintiff's trademark (or any marking substantially indistinguishable therefrom); all books and records showing defendants' manufacture, purchase, financing, transporting, receipt, distribution and sale of merchandise

---

[2] Apparently, the other products were authentic.

[3] Plaintiff requests to search the warehouse and office portion of the building.

bearing a copy of plaintiff's trademark (or any marking substantially indistinguishable therefrom); all books and records showing defendants' manufacture, purchase, financing, transporting, receipt, distribution and sale of forms of markings, packaging materials, advertisements "and the like" bearing a copy of plaintiff's trademark (or any marking substantially indistinguishable therefrom); and all books and records showing defendants' manufacture, purchase, financing, transporting, receipt, distribution and sale of hoisin sauce, ground bean sauce, thin soy sauce, thick soy sauce and double black soy sauce without referring to the name of any particular manufacturer.

I. Ex-Parte Seizure

**A. Section § 1116(d)(1)(a) Standard**

15 U.S.C. § 1116(d)(1)(a) provides that:

> In the case of a civil action arising under section 1114(1)(a) of this title or section 380 of Title 36 with respect to a violation that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the court may, upon ex parte application, grant an order under subsection (a) of this section pursuant to this subsection providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation.

The statute further states that the application shall not be granted unless:

> (B) the court finds that it clearly appears from

specific facts that -
(I) an order other than an *ex parte* seizure order is not adequate to achieve the purposes of section 1114 of this title;
(ii) the applicant has not publicized the requested seizure;
(iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;
(iv) an immediate and irreparable injury will occur if such seizure is not ordered;
(v) the matter to be seized will be located at the place identified in the application;
(vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and
(vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

18 U.S.C. § 1116(d)(4).

In the present case, plaintiff has not established that the property to be seized will be located at the address identified in the ex-parte seizure application.

Although seizures under § 1116 are constitutionally permissible, "this statute must be construed in accordance with the Constitution . . . . Though the Fourth Amendment principles of probable cause and particularity do not apply with the same force in civil proceedings, they inform and restrict the statute's implementation." *Time Warner Entertainment Co., L.P. v. Does Nos. 1-2*, 876 F.Supp. 407, 412 (E.D.N.Y. 1994).

"While there is no bright line rule for staleness, the facts

in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir.1993).

Here, plaintiff waited more than three weeks from the date of the purchase of counterfeit items before filing its application before this Court. The affidavits provided in support of its application do not establish that plaintiff undertook further investigation before or after the purchase of the counterfeit goods which would assure that there are still counterfeit goods on the premises to be searched.[4] Since close to a month has lapsed since the purchase of the counterfeit items, probable cause to believe that the items to be seized will still be located at the 111 13th Street, Brooklyn, NY address is lacking. Accordingly, plaintiff's motion for an *ex-parte* seizure order is denied, without prejudice to its renewal.

---

[4] The only additional evidence provided in support of its application is the results of a New York State Department of State, Division of Corporations search showing defendant Angus Wong as the Chairman or Chief Executive Officer of Combo Trading Inc.

## Conclusion

For the reasons set forth above, plaintiff's motion for an *ex-parte* seizure order is denied, without prejudice to its renewal. The Clerk is directed to transmit a filed copy of the within to plaintiff.

SO ORDERED.

Dated :   September 19, 2007
         Brooklyn, New York

                                    s/ Judge Charles P. Sifton
                          By:  _____
                                    United States District Judge